# Sands, Adm'r., v. Hammell.

### *Bill in Equity to Declare and Settle a Trust.*

1. *Life insurance; insurable interest.*—When a policy of life insurance on the life of the assignor, is assigned to one sustaining no relation by blood or marriage, and as to whom the assignor is under no pecuniary obligation, the assignment is repugnant to public policy and void.

2. *Parties to bill of exchange; order of liability.*—As between the several parties to a bill of exchange, the acceptor is *prima facie* primarily liable, and the presumption is that he has funds in his hands to meet the draft.

3. *Evidence; entries or accounts made by witness since dead, or out of of jurisdiction of court.*—Books of accounts, or written entries made in the usual course of business by a witness who is shown to be dead or beyond the jurisdiction of the court, are admissible in evidence when shown to be in the handwriting of such deceased or absent witness, and purport or are shown to have been made at or about the time of the alleged transaction.

4. *Pleading; statute of limitations.*—The statute of limitations will not be considered by the court unless it is raised by appropriate pleading.

APPEAL from Mobile Chancery Court.

Heard before Hon. W. H. TAYLOE.

This bill was filed by appellant against the appellee, and sought to recover the proceeds of a policy of insurance issued upon the life of appellants intestate, Geo.

W. Agnew. Complainant alleged that said policy was assigned by said Agnew to the defendant Hammell upon the trust that the latter would care for him in sickness, and provide out of the proceeds of such policy for the payment of the expenses of his sickness, and of his funeral, and one or two other personal debts. Complainant further alleged that defendant had collected said policy, and failed to carry out the trust or account for the proceeds. The defendant denying any trust, alleged that said policy of insurance was assigned to him by said Agnew as collateral security for a debt due him on account of the payment to Marcus Lyons, of a claim held against said Agnew; that he paid the premiums on said policy and made other advances to Agnew, and that he owed the estate nothing.

The defendant was allowed to prove by one Solomon Heidelberger that certain entries in the books of Marcus Lyons were in the handwriting of said Lyons, and purported to be made at the time of the transactions to which they referred. Lyons was dead. Thereupon the entries above referred to were admitted in evidence.

Such other facts as are material are stated in the opinion.

On submission for final decree the chancellor decreed that the complainant was not entitled to relief, and dismissed the bill.

From this decree complainant appeals.

W. D. WICKERSHAM, R. P. DESHON and E. L. RUSSELL, for appellant.—1. Entries made by a tradesman in his books of accounts are not admissible in his favor. 1 Brick. Dig., p. 833; *Holliday v. Butt*, 40 Ala. 178; *Jordan v. State*, 52 Ala. 191; Code, § 2765.

2. The burden was upon Hammell to prove his insurable interest in the life of Agnew.—104 U. S. 775; 75 Ala. 185; 81 Ala. 332; 88 Ala. 241.

3. The Agnew draft was not paid until three years after maturity, yet there was no notice to Agnew of its dishonor by the acceptor. This was necessary to bind the drawer, Agnew.—2 Dan. Neg. In., §§ 995, 1017; 98 Ala. 552–560; 45 Ala. 449; 18 Ala. 259–262.

4. The acceptor of a bill is the principal debtor, and is presumed to have funds of the drawer in his hands with which to meet it.—Byles on Bills, 245 and n.; 89

Ala. 474. It would have been competent to have shown that Agnew had no funds in Hammell's hands, but this was not done.

MILLER & PRINCE, *contra.*—The evidence shows that Hammell accepted the bill for accommodation of Agnew, and hence the presumption of funds of the drawer being in hands of the acceptor is rebutted.—2 Ran. Com. Paper, §§ 633–634; *Twilley v. Lyon,* 18 Ala. 552; 2 A. & E. Enc. of Law, 378.

2. The entries made in his books by Lyons are competent evidence.—37 Ala. 222.

3. The statute of limitations is not brought into this case, either by the pleading or by the proof.—3 Brick. Dig., § 402; 68 Ala. 387; 76 Ala. 306; 79 Ala. 208.

4. Complainants remedy, if any, is at law.—71 Ala. 193.

HARALSON, J.—It is well settled, that if appellant's intestate, Geo. W. Agnew,—sustaining no relationship of blood or marriage to the appellee, Hammel,—was under no pecuniary obligation to him, then the assignment of the insurance policy by him to Hammel, was repugnant to public policy, illegal and void, and conferred no benefit on the latter.—*Ala. Gold L. Ins. Co. v. Mobile M. I. Co.,* 81 Ala. 332; *Stoelker v. Thornton,* 88 Ala. 246; *Helmetay v. Miller,* 76 Ala. 186.

It is shown, without any question, that Hammel paid the first, and all the other premiums on said policy, amounting, without interest, to $970., and the funeral expenses of deceased,—$254.50,—making a total of $1,224.50, which amount, with proper interest on the premiums paid, he would be entitled to retain, on an accounting in this case, out of the four thousand dollars collected by him.

On July 20th, 1882, Geo. W. Agnew & Co.,—which, under the proofs, was Agnew himself,—drew a draft on appellee in favor of and indorsed by himself to Marcus Lyons, for $2,606.95, due five months after date, which draft was accepted by appellee. If this was Agnew's debt, and Hammel has the right to retain for it and the interest accrued on it, the $4,000. collected by him on the policy, it will not be sufficient to pay what is due him, and complainant has no case.

As between the several parties to the bill, the acceptor, Hammel, was *prima facie* the party primarily liable, and the presumption was, that he had funds in his hands to meet the draft.—3 Brick. Dig., p. 85, §§ 47–51; *Bolling v. McKenzie*, 89 Ala. 470.

But, did this draft represent a debt owing by Agnew to Hammel, or, was it drawn by him, to pay a debt to Lyons, out of funds of his in the hands of Hammel? Solomon Heidelberger is the only witness examined, to whose evidence reference will be made. He testified, that the books of Marcus Lyons,—a merchant doing business at the time in Mobile, who died in 1886 or 1887,—showed an indebtedness of Agnew to Lyons originating in 1878, including interest, amounting to $2,625., with Hammel as his surety or indorser; that this debt, the principal of which was $2,500., was renewed annually by Agnew, with Hammel as indorser, until July 10th, 1881, and that the interest was paid to each renewal, and it was shown from said books that on July 4th, 1881, and January 17th, 1882, there was paid $125. interest on the debt, and on the 3d day of July, 1885, the entry shows a payment of $242.65, "interest on account of note of Geo. W. Agnew, paid by Hammel." The witness testified that all these entries were on the book of bills receivable, of said Lyon and in his hand-writing, except the payment of the last item of interest, and this was entered on the cash book by himself,—the book-keeper of Lyon. On July 20, 1882, the draft or bill above referred to, drawn and accepted by Hammel and indorsed by Agnew to Lyons for $2,606.95, was given. The witness states, that he made out this paper and Agnew was present and signed it. He also testified, that he was present when this draft of Agnew's, thus carried on the books of Lyons so long, and for which Hammel was liable, was settled between Hammel and Lyon; that it was settled by Hammel giving Lyon his due bill, which he afterwards paid, for $2,000., and $867. paid in cash.

This witness further testified that the draft was paid by Hammel to Lyons, and that Agnew never paid Hammel. He was asked, if Agnew ever secured this draft in any way, and he replied, that he did so by a policy of life insurance; that he saw Mr. Agnew, a few days after he took out the insurance and he said he had taken out a

life insurance policy to secure Mr. Hammel, and that he would send the papers around to witness; that witness knew of the indebtedness of Agnew to Hammel at the time, and Agnew knew witness knew of it. There is no evidence at all, that Hammel ever owed Agnew a dollar; and, from the entries on the books of Lyon, made by himself in his life time, and of which he would be competent to testify, if alive, and from the evidence of this witness, one has all reasonable satisfaction, that the indebtedness as claimed by defendant, on the part of Agnew to him, as represented by said draft, and paid by Hammel to Lyon, was Agnew's real *bona fide* debt, which he desired to secure, and did secure to Hammel by the taking out and assignment to him of said insurance policy.

Objection is raised by appellant, that the entries made in the books of Mr. Lyon are not evidence in favor of appellee, but this position is untenable. In the *Bank v. Plannett*, 37 Ala. 226, it was said "that books of accounts, kept by a deceased clerk, and all other entries or memoranda made in the course of business or duty, by any one who would at the time have been a competent witness to the fact which he registers, are admissible evidence." And in *Elliott v. Dykes*, 78 Ala. 157, it was again said: "When a witness is shown to be dead, or beyond the jurisdiction of the court, written entries and memorials of a transaction entered in the usual course of business, and which are shown to be in the handwriting of the absent or deceased witness, and purport or are shown to have been made at or about the time of such alleged transaction, are admissible in evidence." See also *Hancock v. Kelly*, 81 Ala. 368; *Terry v. Birmingham National Bank*, 93 Ala. 599.

Of the statute of limitations, insisted on by appellant, as to the secured debt of appellee, it is sufficient to say, if it could be pleaded at all, it is nowhere put in issue in the pleadings, and we will not consider it.—*Parker v. Jones*, 67 Ala. 234; *Thompson v. Parker*, 68 Ala. 387; *Espy v. Comer*, 76 Ala. 506.

We find no error in the decree of the court below, and it is affirmed.