# Sharp *v.* Blanton, *et al.*

*Bill by Infants to Redeem from Mortgage.*

(Decided October 21, 1915. 69 South. 889.)

1. *Mortgages; Redemption by Infant Heir; Purchase by Mortgagee.* —Where a mortgagee has purchased at his own sale under a power of sale contained in the mortgage not authorizing him to purchase, the infant heirs of the deceased mortgagor may redeem at any time within two years after their majority, provided the period of redemption is not extended beyond twenty years from the date of the sale.

2. *Evidence; Books of Account.*—Under section 3975, and section 4003, Code 1907, books of accounts of a decedent are admissible in

[Sharp v. Blanton, et al.]

evidence in proof of services rendered, upon proof that they were his books, and of his handwriting.

3. *Same; Hearsay; Declaration in Course of Business; Proof of Birth.*—Entries in books of original accounts of a deceased physician, proved to be in his handwriting, and tending to show the date of the birth of a litigant, which was in issue, and as to which the physician would have been a competent witness, if living, were admissible in evidence for that purpose.

4. *Same; Shop Book Rule.*—The shop book rule is not founded on the principle that the entries are a part of the res gestae, but on the principle of necessity; such evidence being the best available after the death of the parties who made the entry.

5. *Same; Character.*—Books of account must appear to the court to be trustworthy in order to be introducible in evidence.

APPEAL from Madison Chancery Court.

Heard before Hon. W. H. SIMPSON.

Bill by J. T. Sharp against C. E. Blanton and others, to redeem from mortgage foreclosure sale. Decree for respondents and complainant appeals. Affirmed.

DOUGLASS TAYLOR, R. E. SMITH, and ADDISON WHITE, for appellant.

COOPER & COOPER, for appellee.

THOMAS, J.—The bill in this cause is filed under the principle, announced in *Alexander v. Hill,* 88 Ala. 487, 7 South. 238, 16 Am. St. Rep. 55, and *Lovelace v. Hutchinson,* 106 Ala. 417, 17 South. 623, that, where a mortgagee has purchased at his own sale, under a power of sale contained in the mortgage, but which did not authorize him to become the purchaser, the infant heirs of the deceased mortgagor may redeem at any time within 2 years after attaining their majority, provided the period is not extended beyond 20 years from the date of the sale.

The appellant is a son of Eli Sharp and Eliza Sharp, who executed a mortgage on the lands described in the bill to C. E. Blanton, administrator of the estate of J. C. Blanton, deceased, of date May 3, 1894, to secure an indebtedness due the Blanton estate. Eli Sharp died April

15, 1896. The said C. E. Blanton attempted to foreclose said mortgage on February 19, 1898, and W. F. Laxson became the purchaser of the mortgaged land at the instance of said Blanton, and conveyance was accordingly executed to him by C. E. Blanton individually and as administrator of the estate of J. C. Blanton, deceased. Thereafter, on the 11th day of February, 1899, said W. F. Laxson, as trustee, reconveyed the properties in question to C. E. Blanton, and on the 17th day of August, 1901, Blanton and wife conveyed the lands to Francis M. Jacks, who, on January 3, 1908, conveyed the same to respondents in the court below.

The theory of the bill is that the sale was voidable at the instance of appellant, inasmuch as the mortgagee, by an arrangement with Laxson, was, in truth, the purchaser at the sale made by himself under the mortgage, whereas the mortgage gave him no such authority to purchase at the sale.

The appellant, in his bill filed August 11, 1913, alleges that he was born September 2, 1891, and that, as a minor heir at law of Eli Sharp, he had 2 years after reaching the age of 21 years, within which to disaffirm the sale and file a bill for the redemption of the premises and for an apportionment of the rents. The bill further alleges that the rents and profits accruing from the property in question, "after allowing all credits to which said Blanton was entitled, more than paid the amount due on said mortgage executed by said Eli Sharp and wife, and that there is nothing due on the mortgage," but that, should anything be found to be due on said mortgage, complainant "stands ready to pay the same, and hereby offers to do so;" that complainant had never affirmed said sale, but "now elects to disaffirm the same."

The appellees contend that the appellant was born on September 17, 1889, and that therefore the bill was filed

after the expiration of 23 years, 10 months, and 24 days from the date of his birth, or more than 2 years after his attaining majority. Appellant insists that he was only 21 years, 11 months, and 9 days of age when the bill was filed. These contentions, varying about 2 years, relate to an event arising nearly a quarter of a century ago. This brief space is important, as determining the complainant's right to maintain his bill.

The appellees offered in evidence entries in the books of original accounts of Dr. J. C. Blanton, as tending to show the true date of complainant's birth. That the book entries were in the handwriting of Dr. Blanton, and were parts of the books of original account kept by Dr. Blanton as a physician, and the fact of his death before the trial, were facts not disputed. Appellant insists, however, that the chancellor committed error in overruling the objections made to the introduction of the evidence. These original books of account were certified to this court for inspection.

It has long been the practice in many of the states, even though the practice is not sanctioned by statute, to admit in evidence, in favor of the estate of a decedent, the books of the decedent, upon proof that they were his books, and of his handwriting, whenever such books would have been evidence with his oath if he were living. —*O'Dell v. Culbert,* 9 Watts & S. (Pa.) 66, 42 Am. Dec. 317; *McLellan v. Crofton,* 6 Me. (6 Greenl.) 307; *Leighton v. Manson,* 14 Me. 208; *Chaffee v. U. S.,* 18 Wall. 516, 21 L. Ed. 908. In this state we have a statute authorizing the introduction of such books as evidence of services rendered.—Code 1907, §§ 3975, 4003.

It is the settled rule of law, both in England and in this country, that a memorandum in writing, made at the time when the fact it records took place, by a person since deceased, in the ordinary course of his business,

corroborated by other circumstances which render it probable that the fact occurred, is admissible as evidence.—Jones on Ev., §§ 319, 320, and authorities there collected; 4 Chamberlayne's Modern Law of Evidence, §§ 3096, 3100; 2 Wigmore on Evidence, §§ 1521, 1523, 1561; 1 Greenl. on Evidence (15th Ed.) §§ 115, 120; 17 Cyc. 387 (11).

In *Halliday v. Butt,* 40 Ala. 178, 182, it is said that: "Accompanied with proof of handwriting, the books of original entries of a physician would, in most, if not in all, cases, bear intrinsic evidence upon their pages of their true character. In New Jersey such and similar books are sufficiently identified by proving that they are in the party's handwriting.—*Shute v. Ogden,* 3 N. J. Law, 921. And such we hold would be prima facie sufficient proof of identity."—*Bolling v. Fannin,* 97 Ala. 619, 12 South. 59.

In *McDonald v. Carnes,* 90 Ala. 147, 7 South. 919, Mr. Justice Somerville collects the early authorities, and he then states the rule of introduction of book entries as evidence as follows: "The original entries made by a person in his own books, or made by his clerk, when apparently done in the ordinary course of business, and contemporaneously with the transaction to which such entries relate, are generally admissible in evidence to prove the correctness of all items within the knowledge of the person making them. Such entries are required to be corroborated by the testimony of the party who made them, if he is living, inasmuch as they are not self-proving. But, if he be dead, or insane, or indefinitely absent from the state, proof of his handwriting will be sufficient."

Chief Justice Stone, in *Elliott v. Dycke,* 78 Ala. 150, said that: "When a witness is shown to be dead, or beyond the jurisdiction of the court, written entries and

memorials of a transaction, entered in the usual course of business, and which are shown to be in the handwriting of the absent or deceased witness, and purport or are shown to have been made at or about the time of such alleged transaction, are admissible evidence in any issue involving the transaction to which they relate."

The earliest case cited by Judge Stone in support of the proposition (*Clemens v. Patton,* 9 Port. 289) is rested on *Doe v. Robson,* 15 East. Rep. 32. There Lord Ellenborough held that entries of charges made by an attorney in his books showing the time when a certain lease prepared for a client was executed, which charges were shown to have been paid, were evidence after the death of the attorney to show that the lease, which bore date August 31, 1770, and purported to grant a term from the 29th of September then ensuing, was not, in fact, executed till after the 29th of September, inasmuch as the charge for drawing and engrossing the lease was under the date of October, 1770. The justice states that the grounds upon which this evidence was received were the "total absence of interest in the person making the entry to pervert the fact, and at the same time a competency in him to know it." The authority for this case was *Higham v. Ridgway,* 10 East. Rep. 108, where the question was upon the day of a person's birth. The account book of the deceased surgeon who attended his mother on that occasion, and in which his professional services and fees were charged, was held admissible in proof of the date of the birth.

So in a case where the question was whether a notice to quit had been served upon the tenant, the indorsement of service upon a copy of the notice by the attorney who served it, made in the due course of business in his office, it being shown that it was the course of business in his office to preserve copies of such notices and to indorse

the service thereon, was held admissible in proof of the fact of service, after the death of the attorney.—*Doe v. Furford,* 3 Barn. & Ad. 890; *Champney v. Peck,* 1 Stark. 404; *Rex v. Cafe,* 7 C. & P. 720.

(4) Notwithstanding the authority of Greenleaf to the contrary, the rule permitting the introduction of the "shop-book" in evidence is not founded on the principle that the entries therein are a part of the res gestae. The relevancy of such evidence is on the principle stated by Lord Ellenborough in *Doe v. Robson, supra,* and by Lord Chief Justice Holt in *Lefebure v. Worden,* 2 Ves. 54, 28 English Reprint, 36, and in *Glynn v. Bank of England,* 2 Ves. 38, 28 English Reprint, 26, that a "shop-book" "has been allowed to be evidence on proof that the servant who writ the book was dead, and this was his hand, and that he was accustomed to make the entries." The American modification of this rule, stated by Mr. Chamberlayne in his Modern Law of Evidence (sections 3056, 3057) is that: "The relevancy of such evidence is found in the automatic regularity and truthfulness with which a bookkeeper or other accountant makes his entries," and in the "regular intuitive spontaneous action in the ordinary and regular routine of business, the absence of motive to misrepresent, the habit of making truthful entries acquired in bookkeeping, and the necessity of so doing. It is the existence of these various factors which gives to the entries their probative force, creates the relevancy of regularity, and renders them primary evidence."

Professor Wigmore, in his recent work on Evidence (volume 2, § 1521), states that the reason for this exception to the rule of hearsay testimony is that: "On the principle of necessity this exception sanctions the use of statements by persons whose testimony, though not necessarily the sole evidence available on the sub-

ject, is yet the only testimony now available from that person. Hence the usual rule applies that the person must be unavailable as a witness: (1750), Harwick, L. C., in *Lefebure v. Worden,* 2 Ves. Sr. 54: 'On proof that the declarant was dead, such entry has been read. * * * By reason of the difficulty of making of proof in cases of this kind, the court has gone so far.' (1819), Parker, C. J., in *Welsh v. Barrett,* 15 Mass. 380: 'The question was thought to fall within the general rule which requires the best evidence the nature of the case admits of. * * * It is analogous to the exceptions to other general rules of evidence.' (1823), Story, J., in *Nicholls v. Webb,* 8 Wheat. 326, 5 L. Ed. 628: 'It is the best evidence the nature of the case admits of. If the party is dead, we cannot have his personal examination on oath; and the question then arises whether there shall be a total failure of justice, or secondary evidence shall be admitted to prove facts, where ordinary prudence cannot guard us against the effects of human mortality.' "

The rule of the production of such evidence against strangers "on the ground of necessity" is supported by late cases of this court.—*Barfield v. Evans,* 187 Ala. 579, 589, 65 South. 928; *Sands, Adm'r, v. Hammell,* 108 Ala. 624, 18 South. 489.

In *Sands, Adm'r, v. Hammell, supra,* the court said: "Objection is raised by appellant that the entries made in the books of Mr. Lyon are not evidence in favor of appellee, but this position is untenable."

In *Bank v. Plannett,* 37 Ala. 226, it was decided: " 'That books of accounts kept by a deceased clerk, and all other entries or memoranda made in the course of business or duty, by any one who would at the time have been a competent witness to the fact which he registers, are admissible.' * * * This evidence is received on what is considered the moral necessity of the case.—

Phil. Ev. (Cow. & Hill's Notes by Van Cott) pt. 1, p. 305 et seq.; 1 Greenl. Ev. §§ 115, 120."

(5) The books must appear to the court to be trust-worthy in order that a party may be entitled to introduce them in evidence.—*North Birmingham Lumber Co. v. Sims,* 157 Ala. 595, 48 South. 84; *Avery's Ex'r. v. Avery,* 49 Ala. 193; 4 Chamberlayne's Mod. Law of Ev. § 3064.

After a due consideration of the excellent brief and argument of appellants, an inspection of the account books of Dr. James C. Blanton, deceased, and a review of the testimony of Dr. A. C. Blanton relative to these account books, together with the testimony of Mrs. Sharp, mother of the complainant, touching the birth of her three children by her husband, Mr. Eli Sharp, the mortgagor, wherein she states that Dr. James C. Blanton was the physician attending at the birth of complainant, we are of opinion that the entries in the account books offered in evidence were relevant, as tending to show the date of complainant's birth.

A careful consideration of the legal evidence convinces us that complainant did not file his bill within the time allowed, under the rule declared in *Alexander v. Hill, supra,* and *Lovelace v. Hutchinson, supra.*

Without indulging presumption in favor of the finding of the chancellor on the evidence (Code 1907, § 5955 [1]), and after weighing the evidence, we deem it just that a judgment of affirmance be, and the same is hereby, entered.

Affirmed.

ANDERSON, C. J., and MAYFIELD and SOMERVILLE, JJ., concur.