(133 So. 714)

## TUCKER v. TUCKER.

8 Div. 279.

Supreme Court of Alabama.
April 9, 1931.

R. B. Patton, of Athens, for appellant.

J. G. Rankin, of Athens, for appellee.

**THOMAS, J.**

The suit filed August 14, 1928, was on account that extended from 1918 to September, 1927, when defendant's husband, intestate, died on September 14, 1927.

The insistence in short of defendant is that intestate sold to plaintiff a stock of goods in the latter part of 1918; that the purchase price was not paid, and same is offered as a set-off against the claim now made. The book account of intestate, made in due course, in 1918, exhibited the items of stock of goods listed and inventoried from intestate to plaintiff. The latter denies the purchase, offers evidence tending to show the sale was made to another for cash, and that intestate made charges against himself on plaintiff's books for articles taken from the store, and admitted to third parties an indebtedness to plaintiff.

The defendant, administratrix of the estate of deceased, testified of her husband's method of bookkeeping, as follows: "I am the widow of S. S. Tucker, deceased, and I know his handwriting. Mr. Tucker kept all of his transactions and made regular entries in the book at the time of the transaction. He brought the books from the store to the house most every night. I stayed in the house and he stayed in the store; I did not clerk for him. When he brought the books to the house he would put the accounts down just like any other man keeps books. The book shows here that they all carried the date; the only time I saw him charge anything on the books was when he would bring them to the house and put the accounts down. I reckon that was the daily entries. I do not know whether he did it every day or not; I was present when he put down the items on pages 200 and 214, which was the invoice for the stock of goods. I know he sold Mr. Tucker the Bill of goods."

■ The book entries in question made by deceased in due course are admissible as best evidence as exception to the hearsay rule. Section 7701, Code; 1 Greenl. on Ev. (15th Ed.) §§ 115, 121; Jones on Ev. §§ 319, 320; 2 Wigmore on Ev. §§ 1521–1523; 4 Chamb. L. of Ev. §§ 3096, 3100; Sands, Adm'r, v. Hammell, 108 Ala. 624, 18 So. 489; Sharp v. Blanton, 194 Ala. 460, 69 So. 889. In this ruling of the trial court there was no reversible error.

■ There was no error in sustaining objection to the questions: "How many stocks of goods do you know of your brother having had

in the last eight or ten years?" and "I will ask you if you ever bought a stock of goods from S. S. Tucker?" The inquiry should have been confined as to time and inquiry of fact to the entry of sale evidenced by defendant's books and the purchase price being set-off against plaintiff's book entries. The only issue of fact for decision was whether or not the stock of merchandise owned by appellee's intestate in the latter part of 1918, and alleged to have been sold, was purchased and paid for. Weil Bros. v. Hanks, 201 Ala. 39, 77 So. 333; Sovereign Camp. W. O. W., v. Hoomes, 219 Ala. 560, 564, 122 So. 686; Jones v. Ballard, 19 Ala. App. 460, 98 So. 40.

■ There was no reversible error committed by the trial court in declining further evidence of the correctness of the books of plaintiff, after they had been shown to be competent and admitted in evidence as his original books and original entries made in due course of the conduct of his business.

■ The statement of Mrs. Tucker, on her redirect examination, that she heard "Mr. John Tucker ask Mr. S. S. Tucker after we had moved from over Elk River to trade with him and buy things from him to apply on the account he owed S. S. Tucker. He asked Sam Tucker to trade with him as much as he could to help pay for the stock of goods he bought from him. I do not know the number of occasions I heard Mr. John Tucker ask Mr. Sam Tucker to trade with him. He said it would help him if S. S. Tucker would trade with him, and he said it on numerous occasions," and, on her cross-examination, that "I do not know what Mr. John Tucker said to Mr. Sam Tucker on numerous occasions. Mr. John Tucker would ask Mr. Sam Tucker to trade with him as he thought it would be helping John and helping Sam. These conversations occurred after we moved from Elk River. My husband continued to buy from over there. He would buy something off and on although it was very inconvenient. In September 1926 my husband got some medicine and a watch from Mr. John Tucker, and he continued to buy stuff up until 1927, and bought from 1918 up until about the time of his death," were competent to sustain the burden of proof or that of going forward with the evidence that the stock of goods was purchased on credit, and that debt existed in favor of plaintiff's intestate. Pollak v. Winter, 173 Ala. 550, 55 So. 828; Monk v. Stuart, 204 Ala. 562, 86 So. 529; Warrant Warehouse Co. v. Cook, 209 Ala. 60, 63, 95 So. 282; Stark & Oldham Bros. Lumber Co. v. Burford, 215 Ala. 68, 109 So. 148.

There is no evidence sufficient to constitute appellant's account sued on as a stated account. It is not shown that appellant was present when intestate bought the watch and made the charge thereof, or that either went over the account in such sense that there was assent to the items thereof.

Moreover, there was no denial of the account as a running account to a period of about three years antedating the trial. The verdict allowed full credit for all the book items as against appellee's plea of set-off; hence there was no injury to appellant.

In actions at law, the statute of limitations has to be pleaded and not taken by demurrer. Russell v. Garrett, 204 Ala. 98, 85 So. 420; Huss v. Cent. Railroad & Banking Co., 66 Ala. 473. There was no error in overruling the grounds of demurrer directed against plea 2.

The judgment of the circuit court is affirmed.

Affirmed.

ANDERSON, C. J., and SAYRE and BROWN, JJ., concur.